## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **ANDREW WELLS, BARRY FRASER, BRENTON COLLINS, DIRK BOTTERBUSCH, CAREY STEWART, CHARLES PEREZ, BENJAMIN SHUGART, AND KASHIF CHOUDRY,** | |
| **Plaintiffs,** | |
| **v.** | **1:14-cv-2655-WSD** |
| **DAUGHERTY SYSTEMS, INC.,** | |
| **Defendant.** | |

## OPINION AND ORDER

This matter is before the Court on Plaintiffs'[1] Emergency Motion for Temporary Restraining Order [5] ("TRO Motion") and Motion for Leave to File Supplemental Brief in Support of Emergency Motion for Temporary Restraining Order [24] ("Motion for Leave").  Also before the Court is Defendant Daugherty Systems, Inc.'s ("Defendant") Motion to Quash Subpoena [16, 17] ("Motion to Quash").

---

[1]     Plaintiffs are Andrew Wells, Barry Fraser, Brenton Collins, Dirk Botterbusch, Carey Stewart, Charles Perez, Benjamin Shugart, and Kashif Choudry.

## I.    BACKGROUND

On August 25, 2014, Plaintiffs filed their Amended Complaint [5]

("Complaint") against Defendant.[2]  Plaintiffs are former employees[3] of Defendant

who terminated their employment and established their own consulting firm,

named Aspirent, in Georgia.  (Complaint ¶¶ 1-2, 22-24).  Plaintiffs, as part of their

employment with Defendant, executed employment agreements that contained

restrictive covenants (the "Restrictive Covenants") limiting Plaintiffs' right to

compete with Defendant.[4]  (Complaint ¶¶ 26-30).  Plaintiffs seek a declaration

from the Court that the Restrictive Covenants to which they agreed are overbroad

and unenforceable under Georgia law, and they seek to enjoin Defendant from

"enforce[ing] (through court action or otherwise) the restrictive covenants [or]

taking any other action to preclude Plaintiffs from engaging in the activities which

the foregoing restrictive covenants purport to prohibit.  (Complaint ¶¶ 41, 47).

On August 25, 2014, Plaintiffs filed their TRO Motion, requesting that the

Court temporarily restrain Defendant from:

> (i) attempting to enforce (through court action or otherwise) the
> unenforceable restrictive covenants contained in their employment

---

[2]     Plaintiffs filed their initial complaint on August 18, 2014.
[3]     Defendant asserts that Plaintiffs Shugart and Choudry are current employees
of Defendant.  (Mem. in Support of Motion to Quash p. 1 n.1).
[4]     The Restrictive Covenants and Non-Disclosure Provisions are contained in
the employment agreements attached as Exhibit A through H of the Complaint.

agreements; and (ii) taking any other action that purports to intimidate and preclude customers or potential customers from working with Plaintiffs, including making false statements that Plaintiffs are unethical and are violating contractual obligations, and that Plaintiffs cannot be legally allowed on their customers' property, until such time as Plaintiffs' motion for summary judgment[5] on its declaratory judgment claim is resolved.

(TRO Motion ¶ 9).

The Court set a hearing on the TRO Motion for September 12, 2014. On September 5, 2014, Defendant filed its Response in Opposition [13] ("Response") to the TRO Motion, and on September 9, 2014, Plaintiffs filed their Reply [14] to the Response ("Reply").[6]

Plaintiffs subpoenaed Mr. Ron Daugherty, Defendant's CEO, and John Wirth, Defendant's Senior Vice President, to appear at the September 12, 2014 hearing. On September 10, 2014, Defendant filed its Motion to Quash Plaintiffs' subpoenas.[7]

On September 11, 2014, the Court conducted a telephonic conference with counsel for the parties to discuss the scope of the TRO Motion and the hearing set

---

[5]    Plaintiffs, in their TRO Motion, state that they have "contemporaneously moved for summary judgment on their claim for a declaratory judgment." (TRO Motion ¶ 8). Plaintiffs did not file their Motion for Summary Judgment [15] until September 10, 2014.

[6]    The TRO Motion, Response, and Reply contained declarations from various individuals and other documentation in support of their respective positions

[7]    On September 11, 2014, Plaintiff's filed their Response in Opposition [21] to the Motion to Quash.

for September 12, 2014.  The Court, after considering the issues presented at the

telephonic conference and upon review of the TRO Motion, Response, and Reply,

concluded that it had sufficient information to decide the TRO Motion without the

necessity of oral argument, and cancelled the hearing.

On September 11, 2014, Plaintiffs filed their Motion for Leave and their

proposed "Response to Reply to Response to Motion" [25] ("Surreply").  On

September 12, 2014, Defendant filed its supplemental response [26]

("Sur-Surreply") in opposition to the TRO Motion.

## II.   DISCUSSION

### A.   Legal Standard

To be eligible for a temporary restraining order or preliminary injunctive

relief under Rule 65, a movant must establish each of the following elements: (1) a

substantial likelihood of success on the merits; (2) that irreparable injury will be

suffered if the relief is not granted; (3) that the threatened injury outweighs the

harm the relief would inflict on the non-movant; and (4) that entry of the relief

would serve the public interest.  See Schiavo ex rel. Schindler v. Schiavo, 403 F.3d

1223, 1225-26 (11th Cir. 2005); Parker v. State Bd. of Pardons and Paroles, 275

F.3d 1032, 1034-35 (11th Cir. 2001).  Preliminary injunctive relief is a drastic and

extraordinary remedy which should not be granted unless the movant can clearly

establish each of the four elements.  <u>Four Seasons Hotels and Resorts v. Consorcio</u>

<u>Barr, S.A.</u>, 320 F.3d 1205, 1210 (11th Cir. 2003).[8]

        B.    <u>Analysis</u>

        Plaintiff, in its TRO Motion, seeks to enjoin Defendant from two activities:

1) "attempting to enforce (through court action or otherwise) the unenforceable

restrictive covenants contained in their employment agreements;" (the

"Enforcement Activity"); and 2) "taking any other action that purports to

intimidate and preclude customers or potential customers from working with

Plaintiffs, including making false statements that Plaintiffs are unethical and are

violating contractual obligations, and that Plaintiffs cannot be legally allowed on

---

[8]     The elements for a temporary restraining order are essentially the same as for a preliminary injunction, except that "[t]he motion must be supported by allegations . . . that such [irreparable] injury is so imminent that notice and hearing would be impractical if not impossible."  <u>Hernandez v. Board of Regents</u>, 1997 WL 391800, *1 (M.D. Fla. 1997) (quoting <u>Chase Manhattan Bank v. Dime Savings Bank of New York</u>, 961 F. Supp. 275, 276 (M.D. Fla. 1997)). Fundamentally, temporary restraining orders are "designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction."  11A Wright & Miller, <u>Federal Practice & Procedure: Civ.2d</u> § 2951.  In this case, Plaintiffs need not establish that the irreparable injury is "imminent," as Defendants have notice of the request for injunctive relief and have had the opportunity to respond.

their customers' property" (the "Ancillary Activity").   (TRO Motion ¶ 9).[9]  The
first activity is one that is alleged in Plaintiffs' Complaint, the second is not.

The Court interprets Plaintiffs' first request to be one to enjoin Defendant
from bringing or threatening to bring a legal action to enforce the Restrictive
Covenants, or informing third parties -- including current or potential Aspirent
clients -- that Defendant intends to enforce the Restrictive Covenants, or that the
provisions are otherwise enforceable.[10]  The Court interprets Plaintiffs' second
request to be one to enjoin Defendant from: 1) accusing Plaintiffs of being
unethical for breaching a provision of their agreements (albeit one that they claim
is unenforceable); or 2) otherwise disparaging Plaintiffs in an attempt to gain a
competitive advantage.

1.   Enforcement Activity

In their TRO Motion, Plaintiffs assert that they are likely to succeed on the
merits because the Restrictive Covenants[11] contain unenforceable tolling

---

[9]      The Court, as a preliminary matter, grants Plaintiffs' Motion for Leave, and
will consider the TRO Motion, Response, Reply, Surreply, and Sur-Surreply in
rendering its decision.  The Court, having cancelled the hearing set for
September 12, 2014, denies as moot Defendant's Motion to Quash.
[10]      Black's Legal Dictionary defines "enforce" to mean "[t]o give force or effect
to (a law, etc.); to compel obedience to."  Black's Legal Dictionary (9th ed. 2009).
[11]      The language of the Restrictive Covenants is contained in paragraph 29 of
the Complaint.  Notably, these provisions contain a paragraph that is not
referenced or challenged in the TRO Motion.  The second full paragraph under

provisions, are territorially overbroad, and do not specify with particularity the nature of the business activities prohibited.  (TRO Motion at 13-19).[12]  Defendant did not respond to Plaintiff's likelihood of success on the merits argument, and Plaintiffs' TRO Motion is deemed unopposed on this element.  See L.R. 7.1(B), N.D. Ga.; Lipscomb v. Cronic, 11-cv-78, 2011 WL 6755198, at *11 (N.D. Ga. Dec. 22, 2011).

Plaintiffs assert that in the absence of injunctive relief they will suffer irreparable injury from the loss of potential clients.  (TRO Motion at 7-10). Plaintiffs claim that Defendant's attempted enforcement of the Restrictive Covenants caused Aspirent to lose The Home Depot, Macy's, and Hyatt as clients. (Id.).  Plaintiffs value this loss of business at more than $1.5 million.  (Id.). Defendant asserts that Plaintiffs, if they have a valid claim, can seek monetary

Paragraph 4(a)(3) provides that the former employees will "continue to be obligated under the 'Confidential Information' section of this Agreement not to use or to disclose Confidential Information so long as it shall remain proprietary or protectable as confidential or trade secret information."  Defendant, in its Response, refers to this section as the "non-disclosure requirements" in the agreements, and asserts that they are enforceable.  Plaintiffs have not requested injunctive relief as to these provisions, and the Court thus need not determine their enforceability.  The Court, when referring to "Restrictive Covenants," only refers to the provisions in the agreements that restrict Plaintiffs' rights to engage in competitive activities.

[12]    The Restrictive Covenants were agreed to prior to May 2011, and thus the "2011 act revising Georgia law related to restrictive covenants in contracts (OCGA § 13–8–50 et seq.) does not apply."  See Lapolla Indus., Inc. v. Hess, 750 S.E.2d 467, 473 (2013).

damages and thus have an adequate remedy at law for this alleged wrongful conduct.

The Court concludes that Plaintiffs have established that they will suffer irreparable harm if Defendant attempts to enforce the Restrictive Covenants.  The Eleventh Circuit, in a case involving restrictive covenants in an employment contract, found that the restriction to the former employee's access to customers consisted of injuries "in the form of lost opportunities, which are difficult, if not impossible, to quantify." MacGinnitie v. Hobbs Grp., LLC, 420 F.3d 1234, 1242 (11th Cir. 2005).  The court in MacGinnitie noted also that Georgia public policy is clear that restrictive covenants are disfavored and that, because of this policy, the court does "not hesitate[] to find irreparable harm in cases involving covenants not to compete."  (Id.) (citing see, e.g., Keener v. Convergys Corp., 342 F.3d 1264 (11th Cir. 2003); Enron Capital & Trade Resources Corp. v. Pokalsky, 490 S.E.2d 136, 138 (1997)); see also Hix v. Aon Risk Servs. S., Inc., 11-cv-3141, 2011 WL 5870059, at *9 (N.D. Ga. Nov. 22, 2011).

The Court concludes that the injury to Plaintiffs outweighs any harm to Defendant, because "[lo]ss of business due to free and fair competition is not a harm; violation of legal rules designed to promote such competition is a harm." See MacGinnitie, 420 F.3d at 1243.  Because Georgia public policy disfavors

8

restrictions on fair competition, the public interest would be served by granting injunctive relief.  See id. at 1242.

Defendant claims that Plaintiffs are not entitled to injunctive relief because Plaintiffs have "unclean hands."  (Response at 9-12).  Defendants assert that Plaintiffs violated Georgia's Computer Trespass Statute and the Georgia Trade Secrets Act of 1990 and these alleged violations preclude Plaintiffs from being granted temporary injunctive relief.  (Id.).  Defendants, relying on several cases that support the well-accepted and uncontroversial principle that unclean hands generally may bar an equitable recovery, states that the Court "refused to issue a temporary restraining order under analogous circumstances in Morgan Stanley DW, Inc. v. Frisby . . . ."  (Response at 12).  Morgan Stanley does not apply.  In that case, Morgan Stanley moved for a temporary restraining order against two former employees who allegedly violated a restrictive covenant.  Morgan Stanley DW, Inc. v. Frisby, 163 F. Supp. 2d 1371, 1373 (N.D. Ga. 2001).  The court concluded that Morgan Stanley was unlikely to succeed in its attempt to enforce the restrictive covenant, would not suffer any irreparable harm in the absence of injunctive relief, that the harm to the former employees outweighed any potential harm to Morgan Stanley, and that the public interest would not be served by the

issuance of a temporary restraining order.  Morgan Stanley, 163 F. Supp. 2d at

1374-1382.

> The court in Morgan Stanley also noted:
>
> Morgan Stanley is estopped from seeking a restraining order against competitive conduct which it admits to engaging in. As demonstrated by Defendants' citation to Morgan Stanley's publicly filed pleadings, Morgan Stanley regularly hires brokers from competitors and, in so doing, engages in the very same practices that it challenges here. Defendants assert, and the Court agrees, that Morgan Stanley [cannot] challenge similar conduct here because of its own unclean hands.

Id. at 1380.

A review of the Morgan Stanley case shows it does not apply here.  Setting

aside that it was the employer in Morgan Stanley which sought to enjoin an

unenforceable restrictive covenant, the court in Morgan Stanley applied the

unclean hands doctrine because the activities that Morgan Stanley sought to enjoin

-- employees leaving and joining competitors -- was the precise activity in which

Morgan Stanley engaged -- hiring employees away from competitors.  The court in

Morgan Stanley simply found that Morgan Stanley's wrongful conduct precluded

it from complaining about others who engaged in the same conduct.

Here Plaintiffs are not seeking to enforce a restrictive covenant against

Defendant or Plaintiffs' former employees.  Defendant instead accuse Plaintiffs of

unclean hands based upon Plaintiffs' alleged violations of Georgia's Computer

Trespass Statute and the Georgia Trade Secrets Act of 1990.  While these accusations can form the basis of separate claims against Plaintiffs, they do not restrict the Court's authority to grant equitable relief in the form of an injunction, enjoining Defendant from enforcing the Restrictive Covenants.  The Court notes further that "[t]o establish the defense of unclean hands, a defendant must: 'First, . . . demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted'"  Boone v. Corestaff Support Servs., Inc., 805 F. Supp. 2d 1362, 1371-72 (N.D. Ga. 2011) (quoting Calloway v. Partners Nat'l Health Plans, 986 F.2d 446, 451 (11th Cir. 1993)).

The Court concludes that Plaintiff is entitled to a temporary restraining order enjoining Defendant from enforcing the Restrictive Covenants, including initiating or threatening to initiate an enforcement action against Plaintiffs, informing third parties that it intends to do so, or stating that the Restrictive Covenants are otherwise legally enforceable.

2.   Ancillary Activity

Plaintiffs next seek to enjoin Defendant from "false statements to Aspirent customers regarding the enforceability of the [Restrictive Covenants], including without limitation, falsely asserting that Plaintiffs are unethical and are violating

contractual obligations."[13] (Mem. in Support of TRO Motion at 7-8). Plaintiffs also accuse Defendant of telling potential clients that it would be unlawful to allow Plaintiffs on their premises. (Id. at 8).

Plaintiffs do not provide any support, and the Court is aware of none, for their apparent contention that "enforcement" of the Restrictive Covenants includes the Ancillary Activity in which Plaintiffs allege that Defendant has engaged. Plaintiffs do not assert in their Complaint any of the statements they seek to enjoin and, in the absence of such allegations, the statements are not now at issue in the litigation.[14] That is, Plaintiffs only allege in the Complaint that they are entitled to a declaration that the Restrictive Covenants are unenforceable, and only seek injunctive relief to prevent Defendant enforcing provisions Plaintiffs claim may not be enforced in Georgia. The Complaint does not allege the complained-about statements as a basis for injunctive relief. An injunction prohibiting the Ancillary Activity is not appropriate. See De Beers Consol. Mines v. United States, 325 U.S.

---

[13]     Plaintiffs do not dispute that they voluntarily entered into the agreements and agreed to the Restrictive Covenants. They allege here only that their agreement not to compete is unenforceable under Georgia law.

[14]     The Court also notes that Plaintiffs have not asserted a claim of slander or defamation against Defendant based upon these comments. O.C.G.A. § 51-5-4 defines slander or oral defamation, in part, as the "[m]aking charges against another in reference to his trade, office, or profession, calculated to injure him therein." O.C.G.A. § 51-5-4(a)(3).

212, 220 (1945) ("A preliminary injunction is always appropriate to grant

intermediate relief of the same character as that which may be granted finally.");

cf. Kaimowitz v. Orlando, Fla., 122 F.3d 41, 43 (A district court should not issue

an injunction when the injunction in question is not of the same character, and

deals with a matter lying wholly outside the issues in the suit.") (citing De Beers,

325 U.S. at 220).[15]

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Emergency Motion for

Temporary Restraining Order [5] is **GRANTED IN PART** and **DENIED IN**

**PART**.  It is **GRANTED** with respect to Defendant's enforcement of the

Restrictive Covenants, including bringing or threatening to bring a legal

enforcement action against Plaintiffs or informing third parties that it intends to do

so or that the Restrictive Covenants are legally enforceable (the "Prohibited

Actions"), and the Prohibited Actions are temporarily **ENJOINED**.  The motion is

**DENIED** with respect to Defendant's alleged Ancillary Activity.

---

[15] The Court is also constrained from enjoining prospectively statements unrelated
to claims regarding the enforcement of the Restrictive Covenants, threats to
enforce them, or that they generally are enforceable.

**IT IS FURTHER ORDERED** that Defendant Daugherty Systems, Inc.'s Motion to Quash Subpoena [16, 17] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Supplemental Brief in Support of Emergency Motion for Temporary Restraining Order [24] is **GRANTED**.

**SO ORDERED** this 12th day of September, 2014.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE